**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| EVON D. H.,[1]<br><br>Plaintiff,<br><br>vs.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>Defendants. | No. 25-CV-1017-CJW-KEM<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Evon D. H. seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for childhood disability benefits (CDB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. This claim is now before the court for the third time, with prior proceedings resulting first in an unopposed motion to remand for further proceedings[2] and a reversal and remand after briefing for additional development of the record.[3] This case has a significant complication because the file from Plaintiff's original application for disability benefits in 1995 is lost.

Most recently, the administrative law judge (ALJ) found that the record still does not contain evidence supporting the conclusion that Plaintiff was disabled before age 22

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] *See* ***Evon D. H. v. Kijakazi (Evon I)***, 20-CV-1045-KEM, Doc. 28 (N.D. Iowa Oct. 21, 2021).

[3] *See* ***Evon D. H. v. Kijakazi (Evon II)***, 22-CV-1018-CJW-KEM, Doc. 25 (N.D. Iowa Oct. 20, 2023).

as required for receipt of childhood disability benefits.[4] Plaintiff argues that the ALJ made findings unsupported by the record and failed to properly apply collateral estoppel policies promulgated by the Social Security Administration. I recommend **reversing** the ALJ's decision and **remanding** for an award of benefits.

## *I. BACKGROUND*

A detailed background of this claim is available in my prior report and recommendation,[5] so I will limit this section to the facts most relevant to the current dispute and developments since my prior recommendation.

Plaintiff previously applied for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. 1381-1383(f). While there is some dispute over the basis of the disability determination, the Social Security Administration found her disabled and awarded benefits in 1995 (after she had already turned 22).

In 2018, she filed the CDB claim currently at issue. A CDB claim allows a disabled adult to qualify for benefits on a deceased parent's earnings record (giving Plaintiff a higher monthly payment than the SSI benefits she already receives),[6] so long as the adult child's disability began before age 22. Plaintiff argued that as part of her SSI claim, the Social Security Administration had already found her disabled before age 22, and that therefore collateral estoppel principles required the Social Security

---

[4] **20 C.F.R. § 404.350(a)(5)**.

[5] ***Evon II***, Doc. 24 (Sept. 27, 2023). Facts without a citation in this background section come from the prior report and recommendation.

[6] At the new ALJ hearing, both the ALJ and counsel appeared to think Plaintiff's SSI benefits had ceased at some point; but although the filing of her CDB claim in 2018 triggered an investigation, there is no evidence her SSI benefits were terminated; she testified at the hearing in October 2024 that she still received benefits, and a November 2024 query of the payment database showed she was "in current pay status." AR 1049, 1060-61, 1322-27.

Administration to make the same finding in her CDB case. Much of Plaintiff's claim file from 1995 is "lost," however, so the Social Security Administration twice found no evidence that her disability began before age 22 and denied CDB benefits, and Plaintiff twice appealed.

The last time this court considered Plaintiff's CDB claim, I summarized my findings as follows:

> [W]e know that in 1995, [Plaintiff] was found to suffer from intellectual disability, a severe medically determinable impairment. We know that she was found disabled because of that impairment (either based on the listings or based on her RFC). We do not know whether the onset date for that impairment was before or after her twenty-second birthday [in August 1994]—but if it was before, then collateral estoppel would bar the ALJ's finding here that [Plaintiff] did not suffer from a medically determinable impairment prior to age 22. POMS[7] guidance provides that "[w]hen the basis for the prior favorable determination or decision is unknown, collateral estoppel does not apply." But . . . the Social Security Administration appears to have more information about the prior 1995 decision than appears in the record. I recommend finding that the ALJ's rejection of collateral estoppel based on the 1995 decision is not supported by substantial evidence and that further development of the record is required.[8]

I recommended remand to further develop the record with:

- efforts to locate the 1995 SSI folder and a detailed description of those efforts;

- all underlying documents that the Social Security Administration has related to the 1995 SSI award (including payment records) and the 2012 CDB denial;[9] [and]

---

[7] Program Operations Manual System, informal guidance published by the Social Security Administration.

[8] ***Evon II***, Doc. 24 (Sept. 27, 2023).

[9] The ALJ had noted Plaintiff had previously filed a CDB claim in 2012 (which was denied), but those documents were not in the record.

- additional consultative examination with IQ testing to get an accurate assessment of [Plaintiff's] cognitive abilities.[10]

The district court adopted my report and recommendation without objection.[11]

On remand, the record was supplemented with multiple documents detailing the results of the search for the lost folder from the 1995 award of benefits, including one "smoking gun": a screenshot of the DDSQ query results for Plaintiff's 1995 claim. AR 1328-29 (Exhibit 28D). A "DDSQ" is "[a] query of [a Social Security Administration] database that shows information about actions taken on a claim by the state agency at the initial and reconsideration levels."[12] It is unclear to this court why it took two remands for this piece of evidence to be included in the record, given that guidance from the Social Security Administration provides that when a prior paper "folder cannot be located," the next step is to "obtain a DDSQ query."[13] The DDSQ query results show that Plaintiff applied for SSI benefits on March 27, 1995; she was awarded benefits on initial review on August 17, 1995; her onset date was determined to be her date of birth in 1972; the basis for the decision was "A61," a code that means she met the listings;[14] and the listing

---

[10] ***Id.***

[11] ***Evon II***, Doc. 25 (Oct. 20, 2023).

[12] ***Glossary***, Susan D. Clasbey, Tennessee Disability Lawyer, https://www.disabilitylawyercolumbia.com/glossary/ (last visited Aug. 31, 2026).

[13] **POMS § DI 11005.085**, Social Security Administration (Dec. 4, 2024) https://secure.ssa.gov/apps10/poms.nsf/lnx/0411005085. Although this POMS was updated in December 2024, this language was in place at least as of 2016. *See* ***Archive of POMS § DI 11005.085***, Wayback Machine (Sept. 22, 2015), https://web.archive.org/web/20150922142942/https://secure.ssa.gov/apps10/poms.nsf/lnx/0411005085.

[14] The Social Security employee who included the screenshot of the DDSQ results explained the code's meaning. AR 1328-29; *see also* **POMS § DI 26510.045**, Social Security Administration (Dec. 17, 2024), https://secure.ssa.gov/poms.nsf/lnx/0426510045 (explaining that "A61" means an "impairment meets level of severity of listings," while A62 means an "impairment equals

number was "01205" (12.05). AR 1328-29.

On remand, Plaintiff also underwent a consultative examination with IQ testing as the court had instructed. AR 1421-25. Plaintiff met with licensed psychologist George Harper, EdD, on July 1, 2024. *Id.* Dr. Harper administered the WAIS-IV IQ test and determined Plaintiff's full-scale IQ to be 41, indicating severe intellectual disability. *Id.*

The ALJ conducted a hearing by phone on October 8, 2024. AR 1046. The ALJ issued a written decision again denying the CDB claim on February 14, 2025. AR 1027. The ALJ found that Plaintiff's prior SSI claim "was based upon schizophrenia spectrum disorder rather than an intellectual disorder" and a disability onset date after age 22. AR 1034. The ALJ did not address or cite the new DDSQ query evidence. AR 1033-34. Instead, the ALJ relied on evidence that was previously in the record:

- The state agency consultant's "explanation of determination" from October 2018 for the CDB claim and continuing benefits review, which states "[t]here is insufficient evidence prior to age 22 . . . to make a decision for the CBD[] claim"; "[t]he [claimant] met the listing for [intellectual disability]";[15] the comparison point decision is from August 17, 1995;[16] and the SSI claim is being continued for one year "due to lost folder issues," but an investigation into inconsistencies in the claimant's "testing and reporting" should be conducted in a year. AR 76; *accord* AR 72.

- Relatedly, the October 2018 cover form for the continuing benefits review, which lists the "date disability began" as one day before Plaintiff's twenty-second birthday; "Code 77" as the reason for continued benefits, which means "data from most recent prior favorable determination insufficient to

level of severity of listings"); **POMS § DI 28035.015**, Social Security Administration (Nov. 15, 2021), https://secure.ssa.gov/apps10/poms.nsf/lnx/0428035015 (explaining field abbreviations).

[15] *See* **POMS § DI 28010.020**, Social Security Administration (Aug. 14, 2024), https://secure.ssa.gov/poms.nsf/lnx/0428010020 (defining "CPD").

[16] The ALJ incorrectly cited this as proof of the onset date for the prior SSI claim, rather than the date of the decision. *See* AR 1033.

determine medical improvement";[17] the "primary diagnosis" is "intellectual disorder" and "secondary diagnosis" is "depression, bipolar & related disorders"; and "capability unresolved" in the "remarks" section. AR 79-80.

- The August 2020 form from the continuing benefits review, which indicates that Plaintiff's SSI benefits would be continued; that the "date disability began" is August 1995; that her "primary diagnosis" was "schizophrenia spectrum and other psychotic disorders" and "secondary diagnosis" was "anxiety and obsessive compulsive disorders"; that the reason for the continuance was Plaintiff's impairment meeting the listings,[18] with listing 12.03AB noted; and in the "remarks" section, that "claimant incapable per Jeannie Sims PhD report dated August 2018." AR 1134-35; *see also* AR 1141-42.[19]

In addition, the ALJ noted new payment records showed Plaintiff had not received payments until September 1995, when she was 23, despite testifying at the September 2022 hearing that her SSI benefits began "when [she] was 18," that she applied when she

---

[17] *See* **POMS § DI 28084.020**, Social Security Administration (Oct. 27, 2015) https://secure.ssa.gov/apps10/poms.nsf/lnx/0428084020.

[18] *See* ***id.*** ("Code 70" as the reason for the continuance in an SSI claim means the "impairment meets listings").

[19] These forms appear identical, other than their date (one dated August 21, 2020; the other August 24, 2020). These forms were new on remand, but the August 21 version appeared in the record previously (AR 768) with some of the "remarks" information redacted; in addition, it listed a slightly different disability onset date—under "date disability began," it says "08/17/1995," as opposed to the other forms listing that date as "08/07/1995." The ALJ continuously cites these forms, which are not reliable evidence because they are not even consistent with each other, in addition to conflicting with other information available to those examiners. *See* AR 1010 (investigative report from March 2020 lists disability onset date as Plaintiff's date of birth and "disability code" as "(3180) – borderline intellectual functioning, (2960) – mood disorders"). As Plaintiff notes, it seems more likely that these forms mean Plaintiff's benefits were continued in 2020 based on a finding that she met the schizophrenia listing *in 2020*, not that that was the original basis for disability. *See* AR 453 (state agency consultant explained in October 2018 that "claimant was allowed benefits based on [intellectual disability]" but the "current allegation is schizobipolar").

was 18, and that her mother received a check for her when she was under 18 but those benefits had stopped when her mother started working. AR 743, 745, 1322.

After determining the prior SSI award did not support the onset of Plaintiff's disability prior to age 22, the ALJ discussed the medical and other records. AR 1034-36. The ALJ concluded that the available treatment notes suggested Plaintiff suffered from schizophrenia but not intellectual disability. The ALJ called Plaintiff's recent IQ test results into question, finding her score (41) so low that it suggested Plaintiff would not be able to live alone or read and write (and noting the evidence she does so), and also pointing to the fact that Plaintiff had previously been found to give questionable effort during prior testing. AR 1035-36. The ALJ noted this evidence additionally supported that Plaintiff's original SSI claim was based on schizophrenia rather than intellectual disability.

The ALJ's decision became final sixty days after its issuance,[20] and Plaintiff filed a timely complaint in this court. Docs. 1, 3. After Plaintiff filed her brief (Doc. 10), the Commissioner filed a motion to remand (Doc. 16). In the motion, the Commissioner continues to assert that the evidence conflicts regarding the onset date, impairment, and reason for Plaintiff's prior SSI award. The Commissioner requests remand, however, based on the ALJ's failure to address the DDSQ query results (the "smoking gun" the court discussed earlier). The Commissioner calls this evidence a "Report of Contact," since the state agency consultant used a "Report of Contact" form to include the DDSQ screenshot in the record; the Commissioner does not acknowledge the evidence as the "Entitlement History from DDSQ." *See* AR 1328. The Commissioner does not argue that the ALJ will be bound by this evidence or that this evidence definitively proves the basis for Plaintiff's prior claim, just that it "contain[s] important information about the basis for the 1995 decision" that the ALJ needs to "consider." The Commissioner also

[20] **20 C.F.R. § 404.984**.

asks that on remand, the ALJ be instructed to provide Plaintiff with a fourth hearing and further consider the July 2024 IQ score of 41. Plaintiff resists remand for further proceedings and requests remand for an award of benefits instead. Doc. 17. The Commissioner did not file a reply. The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## *II. DISCUSSION*

The parties agree that this case needs to be remanded back to the Social Security Administration; the only dispute is whether the Commissioner should be given a fourth chance to deny Plaintiff's CDB claim, or whether the court should instead direct remand for an award of benefits. Both parties recognize that remand for an award of benefits is appropriate when "the record overwhelmingly supports a finding of disability."[21]

The Commissioner appears to recognize that substantial evidence does not support the ALJ's finding that Plaintiff's 1995 SSI award found her disabled as of the date of the decision[22] based on the listings for schizophrenia. But the Commissioner contends the record does not "'overwhelmingly' support a finding of disability" "[i]n light of the conflicting evidence regarding the basis of the 1995 SSI disability finding and the date the disability began." Doc. 16-1. The Commissioner cites no additional evidence beyond what the ALJ relied upon. Although the basis for Plaintiff's 1995 SSI award is described differently at various times in the record decades after-the-fact, the court previously remanded for the Social Security Administration to obtain primary evidence on the basis

---

[21] ***Taylor v. Chater***, 118 F.3d 1274, 1279 (8th Cir. 1997).

[22] To determine disability, the Social Security Administration is necessarily reviewing treatment records and other evidence from prior to the ALJ's decision date, so an "onset date" of the date of the decision awarding benefits would not really make sense in *any* case.

for the award. The Social Security Administration did just that, running a DDSQ query in its database and placing a screenshot of those results in the record. The DDSQ query results definitively show that the Social Security Administration awarded Plaintiff SSI benefits in August 1995 based on a finding that she met Listing 12.05 for intellectual disability since birth. Guidance from the Social Security Administration recognizes that when a paper folder is lost, the next best evidence of the claim is the DDSQ query results.[23] I find that this evidence overwhelmingly establishes the basis of Plaintiff's past SSI award; an ALJ on remand could not find differently and be supported by substantial evidence.[24]

My prior report and recommendation discussed collateral estoppel and the effect of Plaintiff's prior SSI award.[25] I noted that under Social Security guidance, collateral estoppel might apply when "the new claim is a CDB claim and the prior favorable determination is 'SSI adult disability with an estimated onset date between ages 18-22.'"[26] I noted that the Social Security Administration generally did not apply collateral estoppel to prior claims based on the listings when those listings had "substantially changed."[27] But I also reasoned that "if the 1995 SSI award were indeed based on Listing 12.05, then it was necessarily determined at that time that [Plaintiff's] intellectual disability began

---

[23] *See* note 13, *supra*.

[24] The Commissioner does not ask for remand to further develop the record on the 1995 SSI claim. The whole purpose of the court's prior remand was to try to gather primary sources to see what exactly state agency consultants were looking at that caused them to describe Plaintiff's SSI claim differently. On remand, the Commissioner was unable to gather any primary evidence to support the state agency consultant's description of Plaintiff's SSI claim in August 2020 relied upon by the ALJ. Frankly, the court finds the Commissioner has had plenty of chances to develop the record on this issue, and remand would just further prolong the inevitable.

[25] ***Evon II***, Doc. 24 at 17-21.

[26] ***Id.*** at 18.

[27] ***Id.***

prior to age 22, as that is one of the requirements of meeting Listing 12.05 (both then and now)."[28]

Since then, the Social Security Administration has updated its collateral-estoppel guidance, and it no longer considers changes to the listings.[29] The Social Security Administration is bound by its prior finding of disability as long as the statutory definition of disability has not changed; the prior benefits have not ceased; the claimant has not engaged in substantial gainful activity; the prior claim's onset date "is on or before the date . . . for entitlement . . . in the new claim"; the prior claim record "is not in terminated status"; and there is no "reason to believe that the prior disability determination . . . was wrong."[30] Plaintiff's prior SSI claim meets these requirements. To be entitled to CDB benefits, Plaintiff had to establish disability prior to age 22. As part of her prior SSI claim, the Social Security Administration found her disabled prior to age 22—it found her disabled since birth[31] based on meeting Listing 12.05 for intellectual disability.

I recommend finding that collateral estoppel principles require the Social Security Administration to find Plaintiff's intellectual disability began prior to age 22. I therefore recommend remanding for an award of benefits on Plaintiff's CDB claim.

---

[28] ***Id.*** at 20-21.

[29] *See* **POMS § DI 27515.001**, Social Security Administration (Mar. 8, 2024), https://secure.ssa.gov/apps10/poms.nsf/lnx/0427515001; *see also* **John S. Whitelaw**, *SSA's New Policy on Collateral Estoppel—Mostly Good News*, National Organization of Social Security Claimant's Representatives (July 24, 2024), https://nosscr.org/article/ssas-new-policy-on-collateral-estoppel-mostly-good-news/ (discussing history leading up to policy change).

[30] **POMS § DI 27515.001**, *supra* note 29.

[31] And even if it did not find her disabled since birth, it necessarily found her intellectual disability began prior to age 22 as part of meeting Listing 12.05.

### *III. CONCLUSION*

I recommend that the district court **deny** the Commissioner's motion to remand for further proceedings (Doc. 16), **reverse** the ALJ's decision, remand for an award of benefits, and enter judgment in favor of Plaintiff.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.[32] Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[33]

**DATED** September 3, 2026.

Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

---

[32] **Fed. R. Civ. P. 72**.

[33] *See* ***United States v. Wise***, 588 F.3d 531, 537 n.5 (8th Cir. 2009).